UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| *DARCY S. STEELE,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 09-548-P-H* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found that, although the plaintiff proved, for purposes of SSD and SSI applications filed in 2008, that she had been disabled since April 2, 2002, she failed to demonstrate good cause to extend her deadline for appealing SSD and SSI applications filed in 2002. I recommend that the decision of the commissioner be vacated, and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of obsessive compulsive disorder ("OCD"), anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), major depressive disorder, and tertiary Lyme

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

disease, Finding 3, Record at 14; that she had been under a disability as defined in the Social Security Act since April 2, 2002, her alleged onset date of disability, Finding 11, *id*. at 18; that there was no basis for reopening her prior SSD or SSI applications, *id*. at 12; and that Social Security Ruling 91-5p ("*"SSR 91-5p") also was considered and did not apply, *id*.[2] The Decision Review Board did not select the decision for review, *see id*. at 7, making it the final determination of the commissioner, 20 C.F.R. § 405.372(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

**I. Discussion**

The plaintiff contends that the administrative law judge's denial of her request to extend time to appeal her 2002 applications both lacks any stated rationale and is unsupported by substantial evidence. *See* Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 14) at 2-12.[3] I conclude that it is impossible to tell whether the administrative law judge

---

[2] The plaintiff was insured for purposes of SSD benefits through December 31, 2005, *see* Finding 1, Record at 14, and therefore, to obtain SSD benefits, was obliged to demonstrate that she was disabled on or before that date, *see Mueller v. Astrue*, 561 F.3d 837, 840 (8th Cir. 2009).

[3] The plaintiff states that she appeals the administrative law judge's "refusal to reopen" the 2002 applications. *See* Statement of Errors at 2. However, technically, she takes issue with his refusal to extend her deadline to request review of the unfavorable 2002 initial denials, rather than to "reopen" the applications. *See, e.g., McLachlan v. Astrue*, 703 F. Supp.2d 791, 796-97 (N.D. Ill. 2010) (explaining difference).

2

applied the correct standard in addressing this narrow issue, and that the plaintiff presents a sufficiently colorable claim to warrant remand for its proper adjudication.

A request for reconsideration of an initial denial of an SSI or SSD application must be filed within 60 days of the date that a claimant receives notice of the decision. *See* 20 C.F.R. §§ 404.909(a), 416.1409(a). If a claimant fails to request reconsideration in a timely fashion, he or she may request an extension of time. If "good cause" is shown for missing the deadline, the commissioner "will extend the time period." *Id*. §§ 404.909(b), 416.1409(b). In determining whether a claimant has shown such "good cause," the commissioner is to consider:

> (1) What circumstances kept you from making the request on time;
>
> (2) Whether our action misled you;
>
> (3) Whether you did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions; and
>
> (4) Whether you had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented you from filing a timely request or from understanding or knowing about the need to file a timely request for review.

*Id*. §§ 404.911(a), 416.1411(a).

SSR 91-5p glosses an earlier version of these regulations, providing, *inter alia*:

> When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination, decision, dismissal, or review by a Federal district court, and the claimant had no one legally responsible for prosecuting the claim (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.

> The claimant will have established mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review.
>
> In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action:
>
> - inability to read or write;
> - lack of facility with the English language;
> - limited education;
> - any mental or physical condition which limits the claimant's ability to do things for him/herself.
>
> If the claimant is unrepresented and has one of the factors listed above, the adjudicator will assist the claimant in obtaining any relevant evidence. The decision as to what constituted mental incapacity must be based on all the pertinent facts in a particular case. The adjudicator will resolve any reasonable doubts in favor of the claimant.

SSR 91-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 810.

The plaintiff filed for SSI and SSD benefits on July 18, 2002. *See* Record at 167-68. By letter dated September 17, 2002, the agency notified her that the applications were denied. *See id*. at 144-46. The plaintiff calculates that her deadline for appealing that denial was November 26, 2002. *See* Statement of Errors at 1.[4] She did not file a timely appeal. *See id.*

In conjunction with her 2008 SSD and SSI applications, the plaintiff's counsel filed two pre-hearing memoranda requesting extension of his client's 2002 appeal deadlines pursuant to SSR 91-5p. *See* Record at 243-44, 250. Both the administrative law judge and the plaintiff's counsel explored with her, at hearing, the reasons that she did not file a timely appeal of the denial of her 2002 applications. The plaintiff testified that she was representing herself during

---

[4] The commissioner apparently agrees. At oral argument, counsel for the commissioner calculated that, with the addition of five days for mailing, the plaintiff's 60-day appeal period began to run on September 22, 2002 (mistakenly cited as December 22, 2002), the date that the plaintiff was discharged from the hospital after giving birth to a son. *See* Record at 273. By that calculation, and assuming that it is appropriate to add five days for mailing at the end of the expiration of the 60 days, the plaintiff had until November 26, 2002, to file her appeal.

the 2002 application process. *See id*. at 48. She acknowledged having received the denial decision. *See id*. Asked by the administrative law judge how she interpreted the decision, she testified:

> I didn't agree with it. But I also felt that this was an administration that knew what it was doing. It was reviewed by people who are experienced with this, and that I didn't really have any recourse because they knew what they were talking about. Their decision, in my opinion, was kind of final. And I didn't feel that I have – I didn't understand how to take it any further.

*Id*. at 48-49. The following colloquy then ensued:

> ALJ: You got a letter. Right?
>
> CLMT: Correct.
>
> ALJ: Does the letter tell you you have the right to appeal?
>
> CLMT: I wouldn't know how to – I didn't – wouldn't know how to go through with that though. I wouldn't have the confidence to –
>
> ALJ: It told you you had a right to appeal though. Didn't it?
>
> CLMT: Yes. It did.
>
> ALJ: Okay. And if you had any questions, you could have simply picked up the phone and called the Social Security Administration.
>
> CLMT: I would imagine it's like that.
>
> ALJ: I mean, you went to someplace to apply the first time. Right?
>
> CLMT: Correct.
>
> ALJ: So you knew where they were. Right?
>
> CLMT: Right.
>
> ALJ: And you knew you could go down there and say, this letter said I can appeal. What do I do? I mean, they told you –
>
> CLMT: I could have. But I went by the answer that they gave me.

5

>            ALJ: You still read that part of the letter that said you had the right to appeal.
>
>            CLMT: Correct.
>
>            ATTY: Do you remember this?
>
>            CLMT: I have the right.
>
>            ATTY: Do you remember what the Judge is asking, or are you just agreeing with what he's saying?
>
>            CLMT: I'm agreeing with what he's saying because that's what they do when they send it to you and it's been denied. Correct?

*Id*. at 49-50.

The plaintiff's attorney also brought out, at hearing, that in 2002 the plaintiff was undergoing treatment by a psychiatrist and a psychologist, Drs. W.W. Albertson and Asha K. Kohli, for OCD, depression, and anxiety and that she was engaging in severe behaviors of picking at parts of her body, including her face, head, nails, feet, fingernails, eyebrows, and eyelashes, and had bloodied her feet from picking to the point that she had difficulty walking. *See id*. at 50-52, 270. She also suffered from anxiety attacks an average of twice a week that would cause her to get jittery, flushed, sweaty, and agitated in making decisions. *See id*. at 55-58. The plaintiff also testified that she has difficulty completing tasks in a timely fashion, has to arrange for her bills to be paid automatically to prevent late payment, became overwhelmed and failed to meet quotas when she had previously worked as a customer service representative, and missed treatment appointments in North Carolina before moving to Maine in 2005. *See id*. at 46-47, 69-70, 73-74 ("Sometimes I am too depressed to get out, and I keep telling myself that I need to go to the appointment because it's very important to me, and I stall, and then I have to wind up calling and telling them I can't make it. Sometimes I just don't feel comfortable talking that day

6

about stuff. . . . I always have trouble being late. I don't know why I'm late, but I'm always late to my appointments.").

The record contains evidence corroborating the plaintiff's difficulties with task completion, for example, timely drop-off of her son at daycare and timely attendance at treatment sessions. *See, e.g., id*. at 215, 378, 406, 469. In a letter dated April 9, 2002, Drs. Albertson and Kohli stated: "It is our estimation that [the plaintiff] will not be able to work for the foreseeable future not only because of the pregnancy but also because of the increasing levels of anxiety and depression which at times totally immobilize her." *Id*. at 270.[5]

The administrative law judge denied the request to extend the deadline to appeal the 2002 decision. The portion of his decision addressing that request states, in its entirety: "The undersigned does not find a basis for reopening the [plaintiff's] prior Title II [SSD] application or Title XVI [SSI] application. Social Security Ruling 91-5p was also considered and does not apply in this case." *Id*. at 12.

The scope of the instant appeal is narrow. It is undisputed that the plaintiff was unrepresented in connection with the 2002 application. The commissioner concedes that, pursuant to both SSR 91-5p and as a matter of constitutional due process, a claimant shows "good cause" for extending an appeal deadline upon demonstrating not only that he or she was unrepresented but also that he or she was suffering from a mental impairment that precluded him or her from either understanding *or* pursuing rights to a Social Security appeal. The plaintiff concedes that, during the relevant period in 2002, she *was* able to *understand* her appeal rights. The question presented, therefore, is whether reversal and remand are warranted on account of

---

[5] The plaintiff's son was born on September 20, 2002. *See* Record at 274.

the administrative law judge's handling of the issue of whether the plaintiff suffered from a mental impairment that precluded her from *pursuing* her appeal rights.

SSR 91-5p requires that a decision denying a request to extend an appeal deadline "state the adjudicator's rationale for not finding good cause[.]" SSR 91-5p at 811. The administrative law judge failed to do so in this case. At oral argument, counsel for the commissioner acknowledged that the decision, insofar as it touched on the request to extend the plaintiff's 2002 deadline, was not well-articulated. However, she noted that this court has stated that "a failure of articulation – while hardly to be emulated or encouraged – does not constitute reversible error when . . . the court nonetheless readily can discern substantial support for the administrative law judge's findings in the Record." *Furr v. Astrue*, Civil No. 08-434-P-S, 2009 WL 3336113, at *4 (D. Me. Oct. 15, 2009) (rec. dec., *aff'd* Nov. 12, 2009) (citation and internal quotation marks omitted). She argued that, on this record, one can discern substantial evidence for an adverse finding on the issue of capacity to pursue an appeal given that (i) the fact that the plaintiff suffered from disabling mental impairments during the relevant period in 2002 does not mean that she was incapable of pursuing an appeal, *see Torres v. Secretary of Health, Educ., & Welfare*, 475 F.2d 466, 468 (1st Cir. 1973) ("[O]ne may be [occupationally] disabled and yet retain the awareness and mental capacity to pursue one's right."), (ii) the scant contemporaneous medical evidence from 2002, including the Kohli/Albertson letter, does not demonstrate that she was *continuously* unable during the 60-day appeal period to pursue that appeal, and (iii) the plaintiff herself testified at hearing that she knew in 2002 where the Social Security office was and how to contact it, as indeed she did upon filing a timely appeal of the initial denial of her 2008 application, *see* Record at 104-05.

I am unpersuaded that the administrative law judge's decision on this point reflects a mere failure of articulation. SSR 91-5p, on its face, does not clearly state that an incapacity to pursue one's appeal rights, as well as an incapacity to understand them, constitutes good cause for a deadline extension.[6] It is impossible to tell whether the administrative law judge applied what both sides now agree is the correct standard: one incorporating the question of the capacity to pursue appeal rights.

It is not the job of counsel for the commissioner at oral argument, or this court, to adjudicate a critical issue for the first time on appeal. *See, e.g., Keith v. Barnhart*, No. 04-46-P-H, 2004 WL 2378864, at *4 (D. Me. Oct. 25, 2004) (rec. dec., *aff'd* Nov. 16, 2004) ("While courts overlook an arguable deficiency in opinion-writing technique if not outcome-determinative, the instant flaw goes beyond such a deficiency: It is instead a wholesale failure to adjudicate a basic point. The commissioner's attempt to create the missing analysis from wholecloth at oral argument comes too late when, as here, the claimant was entitled to be presented with a reasoned explanation in the underlying decision.") (citations and internal quotation marks omitted); *see also, e.g., Soto v. Secretary of Health & Human Servs.,* 795 F.2d 219, 222 (1st Cir. 1986) ("We are ill-equipped to sort out a record that admits of conflicting interpretations. Accordingly, we believe the case must be remanded. . . . The Secretary may take additional evidence on remand, and is not obliged to accept the results of claimant's IQ tests if there is a substantial basis for believing that claimant was feigning the results. If the Secretary

---

[6] As the plaintiff notes, *see* Statement of Errors at 7, 20 C.F.R. §§ 404.911(a) and 416.1411(a), which are among the regulations that SSR 91-5p glosses, were amended after the issuance of the ruling to add a fourth category of factors relevant to "good cause" analysis: "[w]hether [the claimant] had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented [him or her] from filing a timely request or from understanding or knowing about the need to file a timely request for review[,]" 20 C.F.R. §§ 404.911(a), 416.1411(a); *compare* SSR 91-5p at 809. This language makes clear that mental limitations preventing a claimant from filing a timely request for review are as relevant as those preventing a claimant from understanding or knowing about the need to do so. However, that remains ambiguous on the face of the ruling itself.

does reject the test results on this basis, however, he should state his reasons for doing so."); *Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

While, as counsel for the commissioner pointed out, there is record evidence favoring her client's position, the evidence is not monolithic. The plaintiff's hearing testimony reasonably can be construed to indicate that she did have difficulty pursuing an appeal despite concededly understanding how to do so. And, as noted above, there is record evidence suggesting that her mental impairments could immobilize her from acting even in regard to important matters. It is plausible that a decision-maker heeding the dictate of SSR 91-5p to resolve any reasonable doubts in favor of the claimant, *see* SSR 91-5p at 811, could have found in her favor. She is entitled to have this point adjudicated, with the basis for the decision articulated sufficiently well to enable a subsequent reviewing court to discern it.

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge